UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Mark Randall Jundt and
Jennifer Lynn Jundt,

      Debtors.

Case No. 19-43465
Chapter 7

## MEMORANDUM OPINION AND ORDER

At Minneapolis, Minnesota, January 15, 2021.

This matter came before the Court for an evidentiary hearing on September 29, 2020, on the United States Trustee's Motion to Dismiss under 11 U.S.C. § 707(b) for an abuse of the provisions of Chapter 7.

Colin Kreuziger appeared on behalf of James L. Snyder, Acting United States Trustee for Region 12 (the "UST"). John Lamey appeared on behalf of the debtors. Gregory Otsuka appeared on behalf of creditor Lakeview Bank. On September 29, 2020, the Court ordered supplemental briefing. Responses were filed, and the matter was submitted for decision on November 23, 2020.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) & 1334, Federal Rule of Bankruptcy Procedure 5005, and Local Rule 1070–1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 & 1409.

The parties have stipulated that the debtors' disposable monthly income exceeds the statutory threshold provided by 11 U.S.C. § 707(b)(2), giving rise to a presumption of abuse. The parties have also stipulated that there are no special circumstances present in this case to

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 01/15/2021
Lori Vosejpka, Clerk, by LH

1

rebut the presumption of abuse.  Further, as discussed below, the Court finds that the debtors' debts are primarily consumer in nature, because the total amount of consumer debt is greater than their business debt.  Thus, the Court finds that the filing of this case is an abuse, the Motion is granted, and the case dismissed.

## THE PARTIES

Movant James L. Snyder is the Acting United States Trustee for Region 12.

Mark Randall Jundt is a resident of the State of Minnesota and a joint debtor in this bankruptcy case ("Mark").  Jennifer Lynn Jundt is a resident of the State of Minnesota and a joint debtor in this bankruptcy case ("Jennifer" and collectively with Mark, the "Debtors").  Debtors are married and have three minor children.

Debtors were the only witnesses to provide live testimony at the evidentiary hearing.  The parties stipulated to the admissibility of deposition testimony of William Foudray ("Foudray"), an owner of Excelsior Property, LLC ("Excelsior Property").

Lakeview Bank is a creditor in this bankruptcy case.  Debtors executed personal guarantees in favor of Lakeview Bank to secure obligations incurred by their business entity, JJ's Coffee Company, LLC.  Lakeview Bank filed a joinder and response in support of the Motion.

## FACTS

The relevant facts are, for the most part, undisputed.  The following facts were either stipulated to by the parties, derived from the submitted documentary evidence, or found by the Court after the evidentiary hearing.

**Bankruptcy Case and Debtors' Income**

1. Debtors filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code on November 14, 2019.[1] Debtors filed Amended Schedules A/B and C on August 3, 2020 (the "Amended Schedules").[2]

2. Mark is an attorney and is currently employed as general counsel for Air T, Inc.[3] Mark's gross monthly income is $24,605.82.[4]

3. Jennifer is presently unemployed.[5] Jennifer previously worked as the owner and operator of Piper's, Debtors' former restaurant business.[6]

4. Debtors' disposable monthly income exceeds the statutory threshold under Section 707(b)(2).[7]

**Lakeville Property**

5. In 2006, Debtors bought property and built a home in Lakeville, Minnesota, and resided there from February 2007, until March 1, 2019 (the "Lakeville Property").[8] The Lakeville Property is Debtors' prior homestead.

6. Debtors have two mortgages secured by the Lakeville Property (the "Lakeville Debt"). On the petition date, the outstanding balance for the Lakeville Debt totaled $355,136.75.[9]

---

[1] Dkt. 1.
[2] Dkt. 34.
[3] Trial Tr., Dkt. 64, at 7:7–13, Sept. 29, 2020.
[4] Stipulated Facts, Dkt. 43, ¶ 4.
[5] *Id.* ¶ 5.
[6] Trial Tr., 87:5–13.
[7] Stipulated Facts ¶ 6.
[8] Trial Tr., 97:22–98:9.
[9] Stipulated Facts ¶ 9.

7.  Debtors incurred the Lakeville Debt with the intent to finance the construction and purchase of their homestead, and not for business or investment purposes.[10]

8.  After moving to Long Lake, Minnesota, and before the petition date, Debtors started to rent out the Lakeville Property.[11]

9.  On Schedule A/B and Amended Schedule A/B, Debtors list the Lakeville Property as both a single-family home and an investment property.[12]

**Long Lake Property and Contract for Deed**

10. On January 30, 2019, Debtors purchased their current homestead in Long Lake, Minnesota, from Excelsior Property (the "Long Lake Property").[13] Debtors moved to the Long Lake Property on March 1, 2019.[14]

11. Foudray is an owner of Excelsior Property and is on the board of directors of Air T, Inc., Mark's employer.[15]

12. Excelsior Property purchased the Long Lake Property as an investment in or around January 2018 for approximately $425,000.00.[16] Over the course of the following six to nine months, Excelsior Property spent approximately $350,000.00 gutting and renovating the Long Lake Property.[17]

13. Debtors entered into a contract for deed with Excelsior Property to finance their purchase of the Long Lake Property, at a purchase price of $824,900.00 (the "Contract for

---

[10] *Id.* ¶ 10.
[11] *Id.*
[12] Dkt. 1 at 11; Dkt. 34 at 4.
[13] Stipulated Facts ¶ 2.
[14] Trial Tr., 44:10–12.
[15] Foudray Dep., Dkt. 49, Ex. N, at 162:2–11, 169:6–20, Aug. 5, 2020. The UST's combined exhibits appearing at Docket 49 are consecutively Bates stamped. In this opinion, the Court will cite to the continuous Bates numbering.
[16] *Id.* 173:23–174:21.
[17] *Id.* 175:3–18, 179:5–11.

4

Deed").[18]  The Contract for Deed calls for no down payment, an initial monthly payment of $1,890.00, monthly interest payments of $3,781.00, and an interest rate of 5.5%.[19]

14. The entire balance is due and payable on or before January 30, 2022.[20] The Contract for Deed is not a nonrecourse obligation.[21]

15. The Contract for Deed requires Debtors to pay property taxes and maintain insurance on the Long Lake Property.[22]

16. Debtors have claimed homestead status with Hennepin County each year they have resided at the Long Lake Property.[23]

17. Since moving to the Long Lake Property, Debtors have made various improvements, renovations, and repairs.[24] Debtors plan to continue to improve the Long Lake Property.[25]

18. The Contract for Deed requires Debtors to obtain prior written consent from Excelsior Property in order to perform any improvements in excess of $10,000.00.[26] To date, Debtors have not requested permission to perform any such improvements.[27]

19. On the petition date, Debtors owed $825,741.00 on the Contract for Deed, with twenty-six then remaining monthly payments.[28]

---

[18] Stipulated Facts ¶ 11.  *See generally* Contract for Deed, Dkt. 49, Ex. A.
[19] Stipulated Facts ¶ 12.
[20] *Id.*
[21] Contract for Deed at 9.
[22] Stipulated Facts ¶¶ 13–14.
[23] *Id.* ¶ 13.
[24] *See generally* Renovation Expense To-Date, Dkt. 49, Ex. J at 92.
[25] *See generally* Renovation Plan, Dkt. 49, Ex. I at 91.
[26] Contract for Deed at 8.
[27] Foudray Dep., 188:11–14.
[28] Stipulated Facts ¶ 15.

20. Debtors' petition lists the Long Lake Property as their residence.[29] On Schedule A/B and Amended Schedule A/B, Debtors characterize the Long Lake Property as a single-family home and not as an investment property.[30]

21. On Schedule C and Amended Schedule C, Debtors exempt their interest in the Long Lake Property under the federal homestead exemption, 11 U.S.C. § 522(d)(1).[31]

22. On Schedule D, Debtors list Excelsior Property as a secured creditor with a claim in the amount of $825,741.00.[32]

23. Debtors' petition, schedules, and Amended Schedules do not characterize the Contract for Deed as an executory contract.

24. On December 10, 2019, and in response to an informal inquiry from the UST, Debtors' counsel provided an accounting of Debtors' consumer and business debt.[33] Debtors described the Contract for Deed as "Contract for Deed on our personal residence – purchased in February 2019," and characterized the Contract for Deed as a personal debt.[34]

25. In response to an inquiry from a representative of Lakeview Bank, Mark described their purchase of the Long Lake Property as a "three year rent-to-own from a colleague here at work."[35]

**Motion to Dismiss**

26. On January 22, 2020, the UST filed a Motion to Dismiss pursuant to Section 707(b).[36] At the time, the UST only challenged Debtors' characterization of the Lakeville Debt.

---

[29] Dkt. 1 at 2.
[30] Dkt. 1 at 10; Dkt. 34 at 3.
[31] Dkt. 1 at 18; Dkt. 34 at 11.
[32] Dkt. 1 at 23.
[33] Dkt. 49, Ex. E at 61–65.
[34] *Id.* at 65.
[35] Dkt. 49, Ex. L at 149.
[36] Dkt. 18.

This is because Debtors characterized the Long Lake Property as a single-family home and the Contract for Deed as consumer debt in their petition and schedules.

27.  On February 11, 2020, Lakeview Bank filed a joinder and response in support of the Motion.[37]

28.  On March 26, 2020, Debtors filed a response in opposition to the Motion.[38] Debtors argued for the first time that the Long Lake Property is an investment property, the Contract for Deed is business debt, the Contract for Deed is an executory contract, and the amount of debt associated with the Long Lake Property is incorrect on their schedules.

29.  After continuing the matter due to the COVID-19 Pandemic, the Court held an evidentiary hearing via Zoom on September 29, 2020.

## DISCUSSION

The issues before the Court are whether the Lakeville Debt and Contract for Deed are consumer debts within the meaning of 11 U.S.C. § 101(8).  If so, the debts in this bankruptcy case are primarily consumer in nature and the case is an abuse under Section 707(b).  The parties have stipulated that there are no special circumstances present to rebut the presumption of abuse if it applies in this case.  Thus, if the Lakeville Debt and Contract for Deed are both consumer debts, the Motion will be granted, and the case dismissed.

**A.  Section 707**

Section 707(b)(1) provides that after notice and hearing, a bankruptcy court, on its own or on a motion by the United States Trustee, may dismiss a case filed by an individual debtor whose debts are primarily consumer debts, if granting relief under the Bankruptcy Code would be an

---

[37] Dkt. 21.
[38] Dkt. 25.

abuse of Chapter 7.[39] If the debts are primarily consumer, Section 707(b)(2)(A)(i) directs the Court to presume an abuse in this case. The UST bears the burden of proof to show that Debtors' case should be dismissed for abuse.[40]

**B.    Consumer Debt**

Here, the UST bears the burden of proving that the Lakeville Debt and Contract for Deed are consumer debts.[41] Consumer debt is defined as "debt incurred by an individual primarily for a personal, family, or household purpose."[42] Although the Eighth Circuit has not defined "primarily" in the context of a Section 707(b) motion, a majority of courts have determined that "primarily" means more than half of the total dollar amount of all debt.[43]

The determination of whether a debt secured by real property is consumer debt is a finding of fact.[44] In making this determination, bankruptcy courts must examine the debtor's intent in incurring the debt at issue.[45] The leading case addressing this issue in the Eighth Circuit is *In re Cox*, decided by the Bankruptcy Appellate Panel. In *Cox*, the BAP held that if a debtor's intent in incurring debt secured by real property is to buy a home or make improvements to a home, the debt is consumer debt under Section 101(8).[46]

The Court turns to an examination of the Lakeville Debt and Contract for Deed in order to determine Debtors' intent in incurring those debts.

---

[39] 11 U.S.C. § 707(b)(1).
[40] *In re Reeves*, 327 B.R. 436, 440 (Bankr. W.D. Mo. 2005).
[41] *See James v. West (In re West)*, Adv. No. 16–04083–can, 2017 WL 746250, at *4–7 (Bankr. W.D. Mo. Feb. 24, 2017).
[42] 11 U.S.C. § 101(8).
[43] *In re West*, 2017 WL 746250, at *6 (citing *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 913 (9th Cir. 1988)); 6 Collier on Bankruptcy ¶ 707.04[2][d] (16th ed. 2016) ("Most courts have looked to whether the total amount of consumer debt is greater than all other debts.").
[44] *Lapke v. Mutual of Omaha Bank (In re Lapke)*, 428 B.R. 839, 842 (B.A.P. 8th Cir. 2010); *see Cox v. Fokkena (In re Cox)*, 315 B.R. 850, 855 (B.A.P. 8th Cir. 2004).
[45] *In re Cox*, 315 B.R. at 855.
[46] *Id.* The case of *In re Cox* will be discussed in more detail below. *See infra* Part D(3)(a).

**C.** **Lakeville Debt**

The parties have stipulated that Debtors intended to finance the purchase and construction of their then-homestead, the Lakeville Property, when they incurred the Lakeville Debt. Debtors did not incur the Lakeville Debt for business or investment purposes. Debtors built a house on the Lakeville Property in late 2006, and resided there until March 1, 2019. Based on the plain language of Section 101(8), and pursuant to *Cox*, the Lakeville Debt is consumer debt.

Debtors ask the Court to reject the plain language of Section 101(8) and instead adopt a "retention theory." When Debtors moved from the Lakeville Property pre-petition, they retained the Lakeville Property and chose to rent it out.[47] Thus, Debtors assert that because they retained the Lakeville Property with a profit motive, and because they used the Lakeville Property as a rental investment property on the petition date, the Lakeville Debt, previously a consumer debt, "transformed" into business debt.

Debtors' argument is without merit. Debtors cite no Eighth Circuit cases that support their "retention theory."[48] The Court is unaware of any legal authority authorizing this type of "transformation" from consumer to non-consumer debt, and bankruptcy courts that have considered Debtors' position have consistently rejected it.[49] Moreover, bankruptcy courts have interpreted *Cox* as rejecting the "retention" argument, finding instead that a court must look to the primary intent for which the debt is <u>incurred</u> (notwithstanding any subsequent actions, intent, or recharacterization), in accordance with the plain language of Section 101(8).[50] It is well

---

[47] Debtors have since sold the Lakeville Property to their tenants. Debtors' Trial Br., Dkt. 56, at 7 n.4.
[48] Debtors cite to *In re Booth*, which does not support their argument on this issue. 858 F.2d 1051 (5th Cir. 1988). Debtors also cite to *In re McDowell*, which concerns bifurcation and is inapposite to this case. *In re McDowell*, No. 12–31231, 2013 WL 587312 (Bankr. S.D. Tex. Feb. 14, 2013).
[49] *E.g.*, *In re Martin*, No. 12–38024, 2013 WL 5423954, at *6 (Bankr. S.D. Tex. Sept. 26, 2013); *In re Inghilterra*, No. 11–11776 HRT, 2012 WL 1137008, at *5 (Bankr. D. Colo. Apr. 4, 2012) (collecting cases); *In re Victoria*, No. 10–42087–JJR–13, 2011 WL 2580106, at *3 (Bankr. N.D. Ala. June 22, 2011); *In re Naut*, No. 07–20280REF, 2008 WL 191297, at *6 (Bankr. E.D. Pa. Jan. 22, 2008); *In re Bertolami*, 235 B.R. 493, 497 (Bankr. S.D. Fla. 1999).
[50] *In re Martin*, 2013 WL 5423954, at *6; *In re Naut*, 2008 WL 191297, at *6; *see* 11 U.S.C. § 101(8).

established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."[51] There is no factual dispute about Debtors' intent when they incurred the Lakeville Debt. Thus, the Court finds that the Lakeville Debt is consumer debt under Section 101(8).

### D.  Long Lake Property and Contract for Deed

The Court must address two issues regarding the Long Lake Property and Contract for Deed. First, whether the Contract for Deed is consumer or business debt. Second, whether the Contract for Deed is an executory contract.

#### 1. Debtors' Arguments

Debtors' main argument is that they purchased the Long Lake Property as an investment opportunity, with the intent to "flip" the house for a profit within several years.[52] Debtors claim that the UST and Lakeview Bank have shown no objective evidence to challenge their intent with respect to the Long Lake Property.

Next, Debtors argue that the Contract for Deed is an executory contract. If the Contract for Deed is an executory contract, Debtors claim that the amount of debt with respect to the Long Lake Property is incorrect on their petition and schedules, and should be reduced from the full purchase price to the remaining monthly payment amounts as of the petition date.

#### 2. UST and Lakeview Bank's Arguments

The UST and Lakeview Bank first argue that Debtors are barred from claiming the Contract for Deed is business debt based on the equitable principles of judicial admission and judicial estoppel.

---

[51] *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *Union Pac. R.R. Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885, 897 (8th Cir. 2013) (citing *Lamie*, 540 U.S. at 534).
[52] Ancillary to this argument, Debtors assert they incorrectly characterized the Long Lake Property as a single-family home only and the Contract for Deed as consumer debt in their petition and schedules.

10

On the merits, the UST and Lakeview Bank argue that the Contract for Debt is consumer debt under the analytical framework of *Cox*, and assert there is no reliable evidence or testimony to support Debtors' characterization of the Long Lake Property as an investment outside of Debtors' self-serving testimony. At best, Debtors present a case of mixed motives.

Finally, the UST and Lakeview Bank urge the Court to reject Debtors' argument that the Contract for Deed is an executory contract, because Debtors' position contradicts the Contract for Deed's unambiguous terms, their own petition, schedules, and Amended Schedules, and controlling Minnesota law.

The Court will first address whether the Contract for Deed is consumer or business debt, and will then turn to the issue of whether the Contract for Deed is an executory contract.

3. <u>Analysis</u>

    a) <u>Contract for Deed as Consumer Debt</u>

Debtors argue they incurred the debt associated with the Long Lake Property in order to flip the property and use the anticipated profit to purchase a permanent home on Prior Lake, in Prior Lake, Minnesota.[53] In support of their position, Debtors' briefs and testimony focused on their two previous flips of property; detailed Debtors' repairs, renovations, and improvements at the Long Lake Property; and discussed the remaining renovation plans. Debtors claim they incorrectly characterized the Long Lake Property and Contract for Deed on their petition and schedules, based on a mistaken assumption that the actual use of the Long Lake Property on the petition date controlled the relevant characterizations, and that they did not realize their mistakes until after the UST filed his Motion. Debtors, however, are bound by their statements made

---

[53] Debtors discussed their intent to buy a home on Prior Lake for the first time at the evidentiary hearing. *E.g.*, Trial Tr., 75:1–2, 84:19–85:9, 91:24–92:2, 121:10–20, 134:5–6.

11

under oath.[54] They have never amended their petition or schedules to change their original characterization, despite having amended them in other areas.[55]

The UST and Lakeview Bank assert there is no reliable evidence or testimony to support Debtors' characterization of the Long Lake Property and associated debt outside of Debtors' self-serving testimony, and argue that the Contract for Deed is consumer debt under the analytical framework of *Cox*. The UST and Lakeview Bank claim that the objective evidence shows that Debtors purchased the Long Lake Property as their residence, live in it as their residence, made normal improvements and repairs, and hope it will appreciate in value if and when they are able to sell. The UST and Lakeview Bank compare Debtors' position to that considered and rejected by the BAP in *Cox* and, at best, assert Debtors' circumstances present a case of mixed motives.

Debtors entered into the Contract for Deed and incurred the debt with the intent of purchasing and occupying the Long Lake Property as their residence. Debtors have lived in the Long Lake Property as their residence since March 1, 2019. It is clear from the evidence that Debtors incurred the debt primarily for personal, family, or household purposes.

Debtors have also made improvements to the Long Lake Property. But the fact that Debtors have made, and plan to continue to make, improvements at the Long Lake Property with a subjective hope of increasing an eventual sale price does not change the debt's nature. Courts within the Eighth Circuit that have considered the issue reject Debtors' position, because with

---

[54] The equitable doctrine of judicial admission stands for the principle that a party is bound by a factual statement in its pleadings, unless the pleading is amended or withdrawn. *Knudsen v. United States*, 254 F.3d 747, 752 (8th Cir. 2001). Statements made under penalty of perjury in a bankruptcy petition and schedules may be eligible for treatment as a judicial admission. *Gervich v. Shepard* (*In re Gervich*), 570 F.2d 247, 253 (8th Cir. 1978); *In re Somerset Apts., Ltd.*, Nos. 8:06CV678, BK 04–84197, 2007 WL 552209, at *3–4 (Bankr. D. Neb. Feb. 21, 2007); *Vanguard Airlines, Inc. v. Int'l Aero Components, Inc.* (*In re Vanguard Airlines, Inc.*), 298 B.R. 626, 635 (Bankr. W.D. Mo. 2003).
[55] *See supra* note 81.

12

"respect to debt secured by real property, if the debtor's purpose in incurring the debt is to purchase a home <u>or make improvements to it</u>, the debt is clearly for family or household purposes and fits squarely within the definition of a consumer debt under § 101(8)."[56]

In *Cox*, as discussed briefly in Part B above, the debtors had liquidated their employee stock option plans and used part of the funds to purchase a lot and make a down payment on the construction of a new home.[57] After construction, the debtors moved into the residence with their children.[58] The United States Trustee filed a motion to dismiss for abuse under Section 707(b).[59] In response to the motion, the debtors argued that the purchase of their residence was intended to be an investment, and that because the debt secured by the residence was utilized for this investment, it did not constitute consumer debt.[60] The debtors testified that they had liquidated their employee stock option plans because they believed the residence offered a better investment opportunity, and expected to use anticipated future equity in the home to finance a portion of their retirement.[61] The debtors admitted that they had lived in the residence with their children since the completion of construction and intended to do so for the foreseeable future.[62] The bankruptcy court granted the motion to dismiss, finding that the evidence showed the debtors incurred the debt primarily for personal, family, or household purposes.[63]

On appeal in *Cox*, the BAP affirmed the bankruptcy court. In doing so, the BAP held that a debtor's subjective hope that real property will appreciate in value and turn a profit in the future does not change the nature of a debt from consumer to non-consumer when the real

---

[56] *In re Cox*, 315 B.R. at 855 (emphasis added); *see In re Lapke*, 428 B.R. at 843; *In re Grover*, No. BR 12–01069, 2013 WL 3994608, at *4–5 (Bankr. N.D. Iowa Aug. 2, 2013).
[57] *In re Cox*, 315 B.R. at 853.
[58] *Id.*
[59] *Id.*
[60] *Id.* at 854.
[61] *Id.*
[62] *Id.*
[63] *Id.*

property is purchased and used as a residence.[64] The BAP rejected the debtors' argument, and concluded that debt incurred by a debtor with the intent to purchase, reside in, or improve a homestead is consumer debt, regardless of whether a debtor hopes to profit from an eventual sale.[65] Most people hope their residence will appreciate in value, and many make home improvements with the sole intent of increasing the resale value.[66] In following *Cox*, courts within the Eighth Circuit and a majority of other courts that have considered the issue hold that mortgage debt secured by real property used as a debtor's principle residence is consumer debt.[67]

Debtors acknowledge *Cox*, but urge the Court to reject it and apply a "profit motive test" used by the Fifth Circuit in *In re Booth*.[68] In *Booth*, the court determined that the test for deciding whether a debt is business or consumer debt is "whether it was incurred with an eye toward profit."[69]

The profit motive test has not been adopted by the Eighth Circuit or any court within the Eighth Circuit. Rather, *Cox* is interpreted as rejecting a profit motive test.[70] In cases with mixed

---

[64] *Id.* at 855.
[65] *Id.*
[66] *In re Grover*, 2013 WL 3994608, at *5.
[67] *In re Lapke*, 428 B.R. at 843 ("It is difficult to conceive of any expenditure that serves a family or household purpose more directly than does the purchase of a home.") (internal quotations omitted) (citing *In re Kelly*, 841 F.2d at 913); *In re West*, 2017 WL 746250, at *6 ("A mortgage-type debt, or a debt secured by real property that is voluntarily incurred to buy a home or make improvements, is the paradigm example of a consumer debt."); *In re Grover*, 2013 WL 3994608, at *5–6 ("An overwhelming majority of courts that have considered the issue of whether debt secured by real property used as a debtor's personal residence is consumer debt have held in the affirmative, as a personal residence is intended primarily for personal, family, or household use rather than for profit.") (citing *In re Woowdard*, No. 09–10201, 2009 WL 1651234, at *2 (Bankr. M.D.N.C. June 10, 2009) (collecting cases)).
[68] The profit motive test has been used by a minority of courts and is derived from a test applied in certain Truth in Lending Act cases.
[69] *In re Booth*, 858 F.2d at 1055.
[70] For example, the bankruptcy court in *In re Grover* rejected the debtor's argument that profit motive controlled the debt's characterization, citing to *Cox* as a case of mixed motives. *In re Grover*, 2013 WL 3994608, at *4–5. While the debtors argued that investment gain and profit were the primary intent behind the debt, the bankruptcy court reasoned that "[s]helter is certainly a higher priority than the possibility of realizing a profit." *Id.* at *5.

14

motives—where a debtor incurs debt to purchase a home to live in and also make a profit—courts within the Eighth Circuit have found the underlying debt to be consumer in nature.[71]

In a footnote, Debtors claim their case is distinct from *Cox* because the debtors in *Cox* did not undertake significant renovations and had no plans to sell the property in the foreseeable future.[72] Here, if accepting Debtors' statements and testimony as true, they anticipate selling the Long Lake Property as early as January 2022 and have made significant improvements.[73] The Court disagrees with Debtors' attempt to distinguish *Cox*. The Long Lake Property had been gutted and fully remodeled before Debtors purchased it.[74] Debtors tore down a shed and built a new one, made some repairs, worked on the garage, and re-landscaped.[75] But, the Court does not find that these actions are so significant as to distinguish Debtors' circumstances from *Cox*, in part, because the amount or extent of renovations undertaken to increase future resale value makes no difference where a debtor incurred the debt with the intent to purchase a home to live in or improve, as Debtors did here.

Debtors rely on *In re Ventura*, for the proposition that living in the property as one's residence does not in and of itself determine the debt's characterization.[76] In *Ventura*, the bankruptcy court determined that debt incurred by a debtor owning and operating a bed and breakfast in a historic mansion constituted business debt, despite the fact that the debtor lived in the mansion as her primary residence.[77] The court relied, in part, on the facts that the debtor had a long history in the hotel business and the town required the debtor to live in the mansion in

---

[71] *In re West*, 2017 WL 746250, at *6 ("Even if a debtor's purpose or intent is mixed, such as to buy the home and later sell it at a profit, the debt is still considered a consumer debt so long as the debtor intends to live in the home.") (citing *In re Cox*, 315 B.R. at 855); *In re Grover*, 2013 WL 3994608, at *4–5 (citing *In re Cox*, 315 B.R. at 855).
[72] Debtors' Trial Br. at 5 n.2.
[73] Renovation Expense To-Date at 92; Renovation Plan at 91 ("Projected 2022 Sale Price").
[74] Trial Tr., 68:21–25, 134:20–21; Foudray Dep., 174:12–175:7, 175:14–18, 179:6–11.
[75] Trial Tr., 110:4–17, 111:24–112:9, 113:23–114:5, 115:3–116:22; Renovation Expense To-Date at 92.
[76] 615 B.R. 1 (Bankr. E.D.N.Y. 2020).
[77] *Id.* at 19–20.

order to obtain a permit, in concluding that the debtor's primary intent in incurring the debt was to own and operate a bed and breakfast.[78]

The current case is not like *Ventura*. Debtors did not incur the debt to run the Long Lake Property as a business operation, nor were they required to live there in order to operate a business.

Even if the Court determined that Debtors had a profit motive, whether it be to flip the Long Lake Property or otherwise,[79] in addition to their motive to purchase, live in, and improve the Long Lake Property, Debtors have established nothing more than a case of mixed motives and the outcome remains the same.

As directed by *Cox*, debts in cases of mixed motives are properly characterized as consumer debts. Thus, the Court finds that the debt incurred to purchase the Long Lake Property is consumer debt.

b) Contract for Deed as an Executory Contract

Next, Debtors argue that irrespective of whether the Contract for Deed is consumer debt, it is an executory contract and that the amount of consumer debt would not exceed business debt. This, Debtors assert, is because the Contract for Deed gives them a purchase option at the end of the term and imposes no further obligations outside of the required monthly payments.[80] Debtors claim that if the Contract for Deed is an executory contract, then the actual amount of debt associated with the Long Lake Property should be reduced from the full purchase price to the sum of remaining monthly payments. This downward adjustment would decrease Debtors' total consumer indebtedness to less than half of their total debt.

---

[78] *Id.*
[79] Trial Tr., 103:8–10, 122:5–11.
[80] Debtors also assert that Excelsior Property has a mortgage that must be satisfied before Debtors could exercise the purported purchase option, but fail to provide evidence to support this claim.

16

The Court disagrees.

The facts do not support Debtors' argument. The face of the Contract for Deed establishes that Debtors owe the entire purchase price, not just the monthly payments; there is an additional lump sum due in January 2022. Also, Debtors did not amend their schedules to list the Contract for Deed as an executory contract or reduce the amount of debt at issue even though other amendments have been made.[81]

The law does not support Debtors' argument. In the Eighth Circuit, state law governs the question of whether a contract for deed is an executory contract,[82] and under Minnesota law, a contract for deed is not an executory contract for purposes of bankruptcy law.[83] The Court rejects Debtors' argument that the Contract for Deed is an executory contract. Thus, the entire amount due under the Contract for Deed shall be considered in determining whether Debtors' debts are primarily consumer.

    4.    <u>Judicial Admission and Judicial Estoppel</u>

As a final matter, the UST and Lakeview Bank argue that the equitable principles of judicial admission and judicial estoppel prevent Debtors from claiming that the Contract for Deed is business debt, due to Debtors' characterization of the Long Lake Property as a single-family home and the Contract for Deed as consumer debt in their petition, schedules, Amended

---

[81] A significant problem with respect to Debtors' arguments about the Long Lake Property and Contract for Deed is the fact that Debtors never amended their schedules to fix the alleged mistakes and mischaracterizations. Debtors state repeatedly that they did not realize their mistakes until after the UST filed his Motion. The UST filed his Motion on January 22, 2020 and Debtors first made these arguments in their brief filed on March 26, 2020. But over four months later when Debtors amended their schedules on August 3, 2020, they did not amend the characterization of the Long Lake Property, Contract for Deed, or the amount of debt, and never explained why they failed to do so.

[82] *Speck v. First Nat'l Bank of Sioux Falls* (*In re Speck*), 798 F.2d 279, 280 (8th Cir. 1986).

[83] *All-Am. Life & Cas. Co. v. Adolphsen* (*In re Adolphsen*), 38 B.R. 780, 780–81 (D. Minn. 1983) (affirming bankruptcy court); *see Sitek v. Striker*, 764 N.W.2d 585, 591 (Minn. Ct. App. 2009) ("For the purposes of bankruptcy law, a contract for deed is a 'non-executory contract' because 'the contract vendor merely holds title as security for payment, just as a lender holds a note.'") (quoting *In re Adolphsen*, 38 B.R. at 780–81).

17

Schedules, and other information provided throughout the case. Debtors did not respond to these arguments.

The Court does not address the merits of either argument, because the Court has already found that the Contract for Deed is consumer debt within the meaning of Section 101(8).

## CONCLUSION

The Court finds that the Lakeville Debt and Contract for Deed debt are consumer debts within the meaning of 11 U.S.C. § 101(8). Debtors' total amount of consumer debt is therefore $1,372,408.08,[84] and total amount of business debt is $1,224,627.09.[85] Thus, Debtors' debts are primarily consumer in nature. Debtors' disposable monthly income exceeds the statutory threshold provided by Section 707(b)(2) and triggers the presumption of abuse. There are no special circumstances present to rebut the presumption of abuse. For these reasons, the case is an abuse of the provisions of Chapter 7, the Motion is granted, and the case is dismissed.

**IT IS ORDERED**

1. The Motion is granted.
2. The case is dismissed.

/e/ Kathleen H. Sanberg
Kathleen H. Sanberg
United States Bankruptcy Judge

---

[84] Debtors total consumer debt, excluding the Lakeville Debt and debt associated with the Long Lake Property, totals $191,530.33. Stipulated Facts ¶ 16. The Lakeville Debt totaled $355,136.75 on the petition date. The debt associated with the Long Lake Property totaled $825,741.00 on the petition date. The total consumer debt in this case is $1,372,408.08.
[85] Stipulated Facts ¶ 16.